UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR TAPIA-FELIX,<br><br>　　　　Petitioner,<br><br>　v.<br><br>ROSEMARY NDOH,<br><br>　　　　Respondent. | Case No. 19-cv-00972-HSG<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner, a state prisoner incarcerated at Avenal State Prison,[1] filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of a conviction obtained against him in state court. Dkt. No. 1. Respondent has filed an answer. Dkt. Nos. 8-9. Petitioner has filed a traverse. Dkt. No. 10. The Court has carefully considered the briefs submitted by the parties. For the reasons set forth below, the petition is DENIED.

**PROCEDURAL HISTORY**

In 2017, a Napa County jury convicted petitioner of second degree murder (Cal. Penal Code §§ 187-189); gross vehicular manslaughter while intoxicated (Cal. Penal Code § 191.5(a)), and evading a policy officer causing death (Cal. Veh. Code § 2800.3(a)). Answer, Ex. A[2] ("CT") 242-44. Petitioner was sentenced to a term of fifteen years to life. CT 541-42.

On September 11, 2018, the California Court of Appeal affirmed the conviction in an unpublished decision. *People v. Tapia-Felix*, C No. A151287, 2018 WL 4328091 (Cal. Ct. App.

---

[1] Petitioner initially named Jose Gastelo as the respondent in this action. In accordance with Rule 25(d) of the Federal Rules of Civil Procedure and Rule 2(a) of the Rules Governing Habeas Corpus Cases Under Section 2254, the Clerk of the Court is directed to substitute Rosemary Ndoh, the current warden of Avenal State Prison, in place of the previously named respondent because Warden Ndoh is Petitioner's current custodian.
[2] The exhibits to the Answer are docketed at Dkt. No. 9.

Sept. 11, 2018). On November 14, 2018, the California Supreme Court summarily denied the petition for review. Ans., Ex. E. Petitioner does not report pursuing collateral review in the state court.

On February 21, 2019, Petitioner filed the instant petition for a writ of habeas corpus in this Court. Dkt. No 1.

## BACKGROUND

The following factual and procedural background is taken from the September 11, 2018 opinion of the California Court of Appeal:[3]

> On October 24, 2015, at approximately 11:30 p.m., Napa County Deputy Sheriff Jeremiah Bohlander (Deputy Bohlander) was on patrol in American Canyon. As he turned onto West American Canyon Road, he saw appellant driving without his headlights on. Deputy Bohlander pursued appellant for about one mile, during which appellant drove in a reckless and dangerous fashion, which we describe further in Part II, until appellant approached an intersection with a red light. Appellant ran the red light, colliding with Ms. Perez's Toyota minivan, which was making a legal left turn. Ms. Perez suffered "severe blunt impact injuries" that caused her death.
>
> On February 1, 2017, the Napa County District Attorney filed a first amended information, charging appellant with the murder of Rosalina Perez (Pen. Code, § 187; count 1); gross vehicular manslaughter while intoxicated (Pen. Code § 191.5 subd. (a); count 2); evading a police officer causing death (Veh. Code, § 2800.3; subd. (a); count 3); driving under the influence (DUI) causing injury with another DUI conviction (Veh. Code, §§ 23153, subd. (a), 23560; count 4); and DUI with a prior conviction causing injury (Veh. Code, § 23153, subd. (b); count 5). The amended information included special allegations that appellant had an excessive blood alcohol content (Veh. Code, § 23578) and caused great bodily injury (Pen. Code, § 12022.7 subd. (a) ).
>
> The prosecution moved in limine to admit several examples of prior acts of appellant's uncharged misconduct. The trial court admitted the following prior convictions: (1) a 1999 DUI conviction; (2) a 1999 hit-and-run conviction arising out of the same incident; (3) a 2002 DUI conviction; (4) a 2002 driving without a license conviction arising out of the same incident; (5) a 2007 DUI conviction; and (6) a 2007 enhancement for a refusal to provide blood, urine, or breath (refusal to test). However, the court excluded a 2006 conviction for driving without a license and crossing a divided highway. Furthermore, the court excluded appellant's statement made during his 2007 arrest that he had been "shocked with electricity" by the police.
>
> On February 2, 2017, a jury convicted appellant of second degree murder, gross vehicular manslaughter, and evading a police officer causing death. [FN 1] The prosecution dismissed the two additional DUI charges.

---

[3] The Court has independently reviewed the record as required by AEDPA. *Nasby v. McDaniel*, 853 F.3d 1049, 1055 (9th Cir. 2017). Based on the Court's independent review, the Court finds that it can reasonably conclude that the state court's summary of facts is supported by the record and that this summary is therefore entitled to a presumption of correctness, *Taylor v. Maddox*, 366 F.3d 992, 999–1000 (9th Cir. 2004), unless otherwise indicated in this order.

2

> FN 1: Based on the guilty verdict on count two, gross vehicular manslaughter while intoxicated, the court dismissed counts four and five pursuant to a motion by the District Attorney.
>
> On April 5, 2017, the trial court sentenced appellant to 15 years-to-life for the murder of Rosalina Perez and stayed the sentences on the remainder of the convictions pursuant to Penal Code section 654. Appellant timely appealed.

*Tapia-Felix*, 2018 WL 4328091, at *1.

## DISCUSSION

**A.  Standard of Review**

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.  A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of

3

facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). The California Court of Appeal was the highest state court to have reviewed these claims in a reasoned decision, and it is the state appellate court's decision that this Court reviews herein.

## B.    Petitioner's Claim

The trial court admitted evidence of the following prior crimes under Cal. Evid. Code § 1101(B): (1) a 1999 Arizona conviction for driving under the influence; (2) a 1999 Arizona hit-and-run conviction arising out of the same 1999 incident; (3) a 2002 Arizona conviction for driving under the influence; (4) a 2002 Arizona conviction for driving without a license, arising out of the same 2002 incident; (5) a 2007 Napa County conviction for driving under the influence and driving without a license; (6) a 2007 Napa County conviction for a refusal to give a blood, urine, or breath sample, arising out of the same 2007 incident; (7) a 2008 Napa County conviction for resisting a peace officer (Cal. Penal Code § 148(a)(1)). Petitioner argues that the admission of the 1999 and 2002 Arizona convictions for driving under the influence, of the 1999 Arizona hit-and-run conviction, of the 2002 Arizona conviction for driving without a license, and of the 2007 Napa County conviction for the refusal to be tested violated his federal due process rights. *See* Dkt. No. 1 at 14. The state appellate court denied this claim as follows.

4

*I. The Trial Court Did Not Err in Admitting Evidence of the 1999 DUI and Hit-and-Run or Evidence of the 2002 DUI.*

Appellant asserts the 1999 hit-and-run conviction, the 2002 driving without a license conviction, and the 2007 refusal to test were inadmissible under Evidence Code sections 352 and 1101, subdivision (a) (section 1101(a)). [FN 2] Furthermore, appellant contends the 1999 and 2002 DUIs and their accompanying convictions should have been excluded because they were too remote in time. We find no reversible error.

> FN 2: All undesignated statutory references are to the Evidence Code.

Section 1101(a) provides: "Evidence of a person's character or a trait of his or her character ... is inadmissible when offered to prove his or her conduct on a specified occasion." However, section 1101, subdivision (b) (section 1101(b)) allows for "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...) other than his or her disposition to commit such an act." We review the trial court's evidentiary determinations under an abuse of discretion standard, and will reverse only if a determination is "arbitrary, capricious, or patently absurd." (*People v. Rodriguez* (1991) 20 Cal.4th 1, 9.)

Appellant contends the trial court erred in admitting the 1999 hit-and-run conviction, arguing the prior uncharged misconduct is not admissible to prove malice for the second-degree murder charge. Even if this assertion were true, the prior hit-and-run was admissible under section 1101(b) to establish a violation of Vehicle Code section 2800.3, subdivision (a) (evading a police officer causing death). To prove the crime of evading a peace officer causing death, the prosecution must show that appellant acted with "'the specific intent to evade the pursuing peace officer.'" (*People v. Flood* (1998) 18 Cal.4th 470, 477.) Commission of a hit-and-run offense suggests the driver was attempting to avoid legal responsibility for an accident. (*People v. Martinez* (2017) 2 Cal.5th 1093, 1102 ["'"The legislative purpose of [hit-and-run statutes] is to prevent the driver of a vehicle ... from attempting to avoid possible civil or criminal liability for the accident by failing to identify oneself."'"].) Accordingly, the trial court did not err in admitting appellant's 1999 hit-and-run conviction for purposes of showing the appellant was not simply driving recklessly in the charged offense, but doing so with the specific intent of evading a peace officer. [FN 3]

> FN 3: Because we find the hit-and-run conviction was properly admitted for purposes of showing state of mind, we need not reach appellant's other contentions regarding this evidence.

Appellant also argues the 1999 DUI and hit-and-run convictions and the 2002 DUI and driving without a license convictions should have been excluded under section 352 because they were remote and cumulative. Under section 352, "'the probative value of the evidence must be balanced against four factors: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses.'" (*People v. Culbert* (2013) 218 Cal.App.4th 184, 192.)

Count one, the murder charge, required the prosecution to establish malice on appellant's part. In *People v. Watson* (1981) 30 Cal.3d 290, 300 (*Watson*), the California Supreme Court concluded a death resulting from a DUI could be charged as a second-degree murder if the defendant acted with implied malice. The court stated, "when the conduct in question can be characterized as a wanton disregard for life, and the facts demonstrate subjective awareness of the risk created, malice may be implied." (*Id.* at p. 298.) Although *Watson* relied solely on the underlying facts in the case, subsequent courts have routinely admitted evidence of a

5

defendant's driving history to establish implied malice. (See *People v. Ortiz* (2003) 109 Cal.App.4th 104, 108–109; see also *People v. McCarnes* (1986) 179 Cal.App.3d 525, 532–533.) Despite occurring 16 and 13 years before the charged conduct, appellant's 1999 and 2002 convictions were relevant to establishing that appellant acted with implied malice because they showed appellant was aware of the danger of his conduct. (*Ortiz*, at p. 118; see also *People v. David* (1991) 230 Cal.App.3d 1109, 115 ["Prior convictions and exposure to mandatory educational programs are admissible to show the accused's awareness of the life threatening risks of driving under the influence."]; accord *People v. Covarrubias* (2015) 236 Cal.App.4th 942, 948.)

*People v. Hernandez* (2011) 200 Cal.App.4th 953, determined that the admission of 40-year-old uncharged misconduct was not an abuse of discretion, stating, "the passage of time generally goes to the weight of the evidence, not its admissibility." Furthermore, the court noted that because of their probative value, "significant similarities between the prior and the charged offenses may 'balance out the remoteness.'" (*Id.* at p. 968.) Here, the challenged evidence arose out of DUIs, including one that resulted in an accident. The similarity of the uncharged misconduct "balance[d] out the remoteness" of appellant's uncharged misconduct. (*Ibid.*) Further, the trial court noted that while some of this prior misconduct occurred "quite a while back," the remoteness was not as "significant [as] it might be ... if there were no criminal conduct between 1999 and the current incident." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 534 ["Remote prior conduct is, at least theoretically, less probative of propensity than more recent misconduct. [Citation.] This is especially true if the defendant has led a substantially blameless life in the interim [citation], which was not true in this case."].)

Like the defendant in *Johnson,* appellant's 2007 DUI conviction established that he had not "led a substantially blameless life in the interim." (*People v. Johnson, supra*, 185 Cal.App.4th at p. 534.) The trial court balanced the remoteness of the uncharged misconduct against the probative nature of the evidence. The convictions were probative because they illustrated appellant's overwhelming knowledge of the risks and legal consequences associated with driving under the influence that, in turn, helped establish implied malice. No abuse of discretion has been shown.

Finally, appellant asserts that the admission of the 2002 conviction for driving without a license, and the 2007 enhancement for refusal to test constituted prejudicial error. He claims that this uncharged misconduct was not similar enough to the charged crime and that each of the prior convictions simply "tended to establish that appellant was a person who regularly acted with disregard for the law." We need not address appellant's assertion that the driving without a license conviction and refusal to test enhancement were erroneously admitted because, even if their admission was error, any error was harmless for the reasons explained below.

II. *If the Trial Court Erred, Any Error Was Harmless.*

Even if the admission of *all* of the challenged evidence was improper, any error was harmless. Our high court has held, "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836; see also *People v. Gutierrez* (2018) 20 Cal.App.5th 847, 861–862 [despite dissimilarities between the current offense and the uncharged misconduct that could warrant exclusion, any error was harmless because it was not reasonably probable the appellant would have obtained a more favorable result because the evidence overwhelmingly pointed to guilt].)

Similarly, here, even if appellant's 1999 and 2002 convictions and 2007 refusal to test were

6

inadmissible, any error would be harmless because the prosecution introduced overwhelming evidence of appellant's guilt. The prosecution presented the jury with unrefuted testimony and video footage that depicted appellant's conduct on the evening in question. The jury was shown video of appellant drinking 11 beers and behaving in an intoxicated fashion in the Mi Zacatecas Restaurant. He was also involved in a verbal altercation with a bouncer, broke a beer bottle on the ground, and bumped into several individuals on the dancefloor. After repeated requests to cease this conduct, the bouncer had to escort appellant outside of the restaurant.

The bouncer testified that appellant, once outside, went to his truck and began drinking more beer. After appellant entered his truck, the bouncer told him not to drive because of his intoxication. Appellant ignored the request and started his vehicle, which lurched forward and hit one of appellant's friends and several cars before he drove over an embankment and onto West American Canyon Road.

A restaurant employee heard the commotion and ran outside. She witnessed the bouncer unsuccessfully trying to pull appellant out of his truck. According to her testimony, appellant was "obviously intoxicated."

Additionally, the prosecution presented the jury with video and testimonial evidence from Deputy Bohlander. Deputy Bohlander testified that at 11:30 p.m. he saw appellant's truck driving on West American Canyon Road without its headlights on. Appellant straddled lanes, ran through a stop sign, and unnecessarily applied his brakes. Deputy Bohlander activated his patrol car's lights, but appellant accelerated rather than pulling over. Appellant was driving at 50 m.p.h. in a 25 m.p.h. zone and sped up to 77 m.p.h. in a 55 m.p.h. zone. During the pursuit, which continued for about one mile, appellant drove in a reckless and dangerous manner, until appellant approached an intersection with a red light. Appellant ran the red light, colliding with Ms. Perez's minivan, which was making a legal left turn on a green light. At the time of impact, appellant's truck was traveling between 86 m.p.h. and 96.4 m.p.h. Deputy Bohlander's testimony was corroborated by his dash camera footage, which was shown to the jury.

Further, the prosecution introduced testimony regarding appellant's attendance in a DUI program following his 2007 conviction to show appellant had the requisite implied malice for a second-degree murder conviction. Karen McElroy, who was the supervisor of Napa County's drunk driver program in 2007, testified the class taught appellant about the dangers of driving under the influence. She also provided a packet of documents from the program which included appellant's enrollment and attendance forms. This evidence tended to show appellant was driving with a wanton disregard for life.

Finally, appellant did not refute his blood alcohol content or any of the aforementioned evidence. [FN 4]

> FN 4: The only mitigating evidence appellant introduced was testimony from Pedro Antonio Leyva Gaxiola, who testified he did not think appellant would intentionally endanger another person's life.

Thus, the evidence of appellant's guilt was overwhelming. While the prosecution mentioned the challenged evidence in closing argument, its remarks focused on the facts of the instant case. Even if every piece of evidence challenged on appeal had been excluded, it is not reasonably probable that a result favorable to appellant would have been reached.

*Tapia-Felix*, 2018 WL 4328091, at *1-*4.

//

7

**1. Legal Standard**

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied,* 479 U.S. 839 (1986). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Supreme Court precedent under § 2254(d)). Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. *See Henry*, 197 F.3d at 1031; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness. *See id.* (citing *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983)). The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at 990. But the admission of evidence violates due process only if there are no permissible inferences that the jury may draw from the evidence. *See Jammal*, 926 F.2d at 920.

**2. Analysis**

The state court's denial of this claim was not contrary to, nor an unreasonable application of, clearly established federal law.[4] Petitioner does not argue that there are no reasonable inferences that can be drawn from these convictions. Rather, his claim is that the admission of this

---

[4] Petitioner primarily argues that the admissions of the prior acts violated Cal. Evid. Code §§ 352, 1101(B). *See* Dkt No. 1. However, federal habeas relief does not lie for errors of state law. *Estelle*, 502 U.S. at 67; *see also Henry*, 197 F.3d at 1031 ("A federal habeas court, of course, cannot review questions of state evidence law.").

8

evidence was improper because it was more prejudicial than probative and because it implied both bad character (in that it suggested that Petitioner was not law abiding) and that Petitioner had a propensity to commit the types of crimes for which he was charged.

There is no clearly established Supreme Court law prohibiting the admission of irrelevant or overly prejudicial evidence. *See Holley*, 568 F.3d at 1101 (Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ"). There is also no clearly established Supreme Court law prohibiting the admission of propensity evidence. The Supreme Court has specifically left open whether admission of propensity evidence violates due process. *Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991) ("we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006); *accord Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (affirming *Alberni* that admission of propensity evidence not contrary to clearly established law for purposes of federal habeas review) ("no Supreme Court precedent establishing that admission of propensity evidence . . . to lend credibility to a sex victim's allegations, and thus indisputably relevant to the crimes charged, is unconstitutional"). *See, e.g., Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (because Supreme Court expressly reserved the question of whether using evidence of prior crimes to show propensity for criminal activity could ever violate due process, state court's rejection of claim did not unreasonably apply clearly established federal law). The absence of a Supreme Court holding that admission of prejudicial evidence or propensity evidence violates due process precludes relief under § 2254(d). *See generally Carey v. Musladin*, 549 U.S. 70, 77 (2006) (given the lack of holdings from the Supreme Court on point, it cannot be said that the state court unreasonably applied clearly established federal law for purposes of § 2254(d)(1)).

Petitioner's arguments to the contrary are without merit. In support of his argument that

9

the admission of these priors violated his due process rights under the Fifth and Fourteenth Amendments, petitioner cites to *Old Chief v. United States*, 519 U.S. 172 (1997); *Estelle v. McGuire*, 502 U.S. 62 (1991); and *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). Only *Old Chief* and *Estelle* are clearly established federal law for the purposes of Section 2254(d) review, and neither case requires the exclusion of the prior acts evidence admitted in this case. As discussed *supra*, *Estelle* expressly declined to hold that the admission of propensity evidence violates the Due Process Clause. In *Old Chief*, the Supreme Court held that *improper* admission of bad character evidence violates due process, but did not require a blanket exclusion of evidence indicating bad character. In *Old Chief*, the Supreme Court found that the admission of bad character evidence was improper because the bad character evidence was being admitted to prove the prior conviction element of the crime and the petitioner was willing to stipulate to that element. *Jammal* does not constitute clearly established Federal law for the purposes of federal habeas review, but the Court notes that *Jammal* also does not require the blanket exclusion of prior bad acts evidence. Rather, in *Jammal*, the Ninth Circuit held that due process is violated by the admission of prior bad acts evidence "[o]nly if there are *no* permissible inferences the jury may draw from the evidence" and the evidence is of such a quality that it necessarily prevents a fair trial. *Jammal*, 926 F.2d at 920 (emphasis in original).

In the instant action, petitioner had not stipulated to the element for which the prior acts were admitted: that he was aware of the dangers of driving under the influence, which is an element of implied malice, which is an element of second degree murder;[5] there were permissible inferences which could be drawn from the 1999 and 2002 Arizona DUI convictions; and the admission of the prior acts evidence did not render the trial fundamentally unfair. The Court agrees with the state court's determination that even though the 1999 and 2002 Arizona DUI convictions were remote in time, the jury could reasonably infer from these convictions that

---

[5] The jury was instructed regarding the murder charge as follows: "The defendant acted with implied malice if: One, he intentionally committed an act; two, the natural and probable consequences of the act were dangerous to human life; three, *at the time he acted he knew his act was dangerous to human life*; and four, he deliberately acted with conscious disregard for human life." RT 2041 (emphasis added).

10

petitioner was aware of the dangers of driving under the influence, an inference relevant to implied malice, which requires a finding that the defendant knew that his act was dangerous to human life. The Court also agrees with the state court's determination that even if the admission of all the challenged evidence was improper, the admission did not render the trial fundamentally unfair given the overwhelming evidence supporting the convictions. There was evidence presented via witness testimony and video that petitioner drank eleven beers at a bar that night, that he engaged in aggressive behavior while at the bar, that he was informed by multiple people that he should not be driving, that he resisted efforts to stop him from driving, that he was driving far in excess of the speed limit and ran a red light immediately prior to the collision, and that he sped up in response to police attempts to apprehend him. The state court's denial of this habeas claim was not an unreasonable application of, or contrary to, clearly established Federal law; nor was it an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. Habeas relief is denied on this claim.

## C.     Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

//

//

## IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: 1/21/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge